IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APELDYN CORPORATION,<br><br>                    Plaintiff,<br><br>v.<br><br>SONY CORPORATION AND SONY<br>ELECTRONICS, INC.,<br><br>                    Defendants. | Civil Action No. 11-440-SLR<br><br>TRIAL BY JURY DEMANDED |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Apeldyn Corporation ("Apeldyn" or "Plaintiff") for its First Amended Complaint against Defendants Sony Corporation ("Sony Corporation") and Sony Electronics, Inc. ("Sony Electronics") (collectively, "Sony" or "Defendants") for injunctive and declaratory relief and for damages, including treble or multiple damages, for patent infringement, states and alleges as follows:

## NATURE OF THE ACTION

1.      U.S. Patent No. 5,347,382, entitled "Liquid Crystal Cell Retarder With Driving Beyond Retardance Value And Two Cells for High Speed," was duly and legally issued on September 13, 1994 ("the '382 Patent" or "Patent-in-Suit").   Apeldyn is the owner by assignment of all rights, title, and interest in and to the '382 Patent.  A copy of the '382 Patent is attached hereto as Exhibit A.

2.      Apeldyn owns and has full rights to sue and recover damages for infringement of the '382 Patent.

3.      Apeldyn invested substantial time and money in researching, designing, and developing the patented technology of the '382 Patent.  Apeldyn's interests in this patented technology have been and continue to be harmed by Sony's infringement.

4.      In general, the technology at issue involves improving the response time of liquid crystal material in VA-mode Liquid Crystal Display modules and panels ("LCD panels").  By applying an overdrive voltage across the liquid crystal material, the liquid crystal molecules can be made to change orientation faster, which improves the quality of moving images on a liquid crystal display.  LCD panels are the main components in LCD televisions, LCD computer monitors, and other finished LCD displays ("LCD products").

5.      Sony has infringed, and if not enjoined, will continue to infringe, the '382 Patent by performing one or more of the following acts:  (i) making, using, offering for sale, and selling in this judicial district and elsewhere in the United States LCD products and LCD panels that are made by a method that infringes one or more claims of the '382 Patent; (ii) importing into this judicial district and elsewhere in the United States LCD products and LCD panels that are made by a method that infringes one or more claims of the '382 Patent; and (iii) actively and knowingly inducing infringement by others of one or more claims of the '382 Patent.

6.      Sony's past and continuing infringement of the '382 Patent has been willful and deliberate, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees and costs.

**THE PARTIES**

7.      Apeldyn is an Oregon corporation, having its principal place of business at 16285 SW 85th Avenue, Suite 408, Tigard, Oregon 97224.

8.      Sony Corporation is a Japanese corporation, having its principal place of business at 1-7-1 Konan, Minato-ku, Tokyo 108-0075, Japan.  Sony Corporation manufactures LCD products in Japan and Korea and directs those products to the United States, including Delaware, through established distribution channels involving various third parties, knowing that these third parties will use their respective nationwide contacts and distribution channels to import into, sell, offer for sale, and use these products in Delaware and elsewhere in the United States.

9.      Sony Electronics is a domestic subsidiary of Sony Corporation that either directly or indirectly imports into, sells, and offers for sale its products in Delaware and elsewhere in the United States.  Sony Electronics is a Delaware corporation, having its principal place of business at 16450 W. Bernardo Dr., San Diego, CA 92127.  Sony Electronics markets and sells Sony's products throughout the United States.

**JURISDICTION AND VENUE**

10.      This action is based upon and arises under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq*., and in particular §§ 271, 281, 283, 284 and 285, and is intended to redress infringement of the Patent-in-Suit owned by Apeldyn.

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.      Defendants have transacted and continue to transact business in the United States and in this judicial district by: using or causing to be used; making or causing to be made; importing or causing to be imported; offering to sell or causing to be offered for sale; and selling

or causing to be sold directly, through intermediaries and as an intermediary, a variety of products that infringe the Patent-in-Suit to customers in the United States, including customers in this judicial district, and Defendants will continue to do so unless enjoined by this Court.

13.     This Court has personal jurisdiction over Sony Corporation and venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and (d), and 28 U.S.C. § 1400(b), in that this Defendant is committing and is causing acts of patent infringement within the United States and within this judicial district, including the infringing acts alleged herein, both directly, through one or more intermediaries, and as an intermediary, and in that this Defendant has caused and causes injury and damages in this judicial district by acts or omissions outside of this judicial district, including but not limited to utilization of its own distribution channels established in the United States and Sony Electronics' distribution channels in the United States, as set forth below, to ship a variety of products that infringe the Patent-in-Suit into the United States and into this judicial district while deriving substantial revenue from services or things used or consumed within this judicial district, and will continue to do so unless enjoined by this Court.

14.     This Court has personal jurisdiction over Sony Electronics and venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1400(b), in that this Defendant is committing acts of patent infringement within the United States and within this judicial district, including the infringing acts alleged herein, both directly, through one or more intermediaries, and as an intermediary.  Sony Electronics regularly imports large quantities of Sony LCD products into the United States for distribution throughout the United States, including in this judicial district.  Sony Electronics is involved in the distribution of infringing LCD products and is aware that its products are sold throughout the United States, including in

Delaware.   The established distribution networks of this Defendant consists of national distributors and resellers, and this Defendant distributes to national retailers that have stores located in Delaware.  By shipping into, offering to sell in, using, or selling products that infringe the Patent-in-Suit in this judicial district, or by inducing or causing those acts to occur, Sony Electronics has transacted and transacts business and performs works and services in this judicial district, has contracted and contracts to supply services and things in this judicial district, has caused and causes injury and damages in this judicial district by acts and omissions in this judicial district, and has caused and causes injury and damages in this judicial district by acts or omissions outside of this judicial district while deriving substantial revenue from services or things used or consumed within this judicial district, and will continue to do so unless enjoined by this Court.

15.    This Court has personal jurisdiction over Sony Electronics and venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1400(b), in that Sony Electronics is incorporated and therefore resides in Delaware for purposes of establishing venue in this district, in that this Defendant has been doing business in Delaware and is committing acts of patent infringement within the United States and within this judicial district, including the infringing acts alleged herein, both directly, through one or more intermediaries, and as an intermediary, and will continue to do so unless enjoined by this Court.

## COUNT I
## INFRINGEMENT OF THE '382 PATENT

16.     The allegations in the foregoing paragraphs are incorporated by reference herein as if restated and set forth in full.

17.     The '382 Patent has become increasingly valuable as LCD products displace conventional cathode-ray tube ("CRT") displays.   According to DisplaySearch, shipments of LCD televisions first surpassed CRT televisions in 2007.   The '382 Patent is also particularly valuable because the LCD market in the U.S. is highly competitive and requires LCD brands like Sony to offer enhanced product performance.   In 2008, iSupply described the "very tight competition in the North American LCD TV market, with the top three brands [including Sony] separated by only 1.8 percentage points of share."

18.     Since issuance of the '382 Patent, Sony has made, shipped, and sold billions of dollars of LCD products and LCD panels.   Sony considers the United States to be a critically important market for these products because, on average, the U.S. accounts for 30% to 35% of the worldwide LCD market.

19.     According to DisplaySearch, Sony shipped more North American LCD televisions than any other company during the fourth quarter of 2007.   DisplaySearch attributed this success to Sony's "[s]trategic alignment with national big box retailers" and a "[g]reater focus on North America, which accounted for 29.5% of global LCD TV shipments for Sony."

20.     After reaching the top of the North American LCD television market, Sony announced in its 2008 Annual Report that it would completely "exit" the CRT television business and "concentrate management resources on the LCD television business."

21.     Since 2005, Sony's LCD televisions in North America have carried the "Bravia" logo.  Bravia is an acronym for "Best Resolution Audio Visual Integrated Architecture."

22.     In its 2006 Annual Report, Sony described launching the Bravia line with "our largest-ever promotions in North America" and said "close communication between the TV Business Group, regional sales companies and Inazawa TEC, the core manufacturing facility for BRAVIA, enabled us to adjust supply to market demand and alter production specifications and designs to match customer preferences in different markets."

23.     The main activity of Sony Electronics is to support Sony's sales in the United States.  For instance, according to sony.com, "Sony Electronics is headquartered in San Diego, California" and its "[o]perations include research and development, design, engineering, sales, marketing, distribution, and customer service."

24.     In 2007, a senior vice president of Sony Electronics revealed Sony's plan to supply a "unique series of models" of LCD televisions to major U.S. retailers.

25.     Reporting on Sony's plan, CNET News—in an article entitled "Sony Plans TV Line for Wal-Mart, Target"—observed that "[t]he new sets will allow Sony to better fend off newcomers without alienating its traditional partners by selling the same sets in different stores for the same price."  In another 2007 article—entitled "Sony LCDs Exclusive to Target Now Available Online"—CNET News reported that "Sony is selling exclusive models of its LCD televisions through discount retailer Target right now."  The article also observed that the "discount retailer plan" allowed "Sony to supply a unique series of models to Target, Wal-Mart, and other big-box retailers in order to better target (forgive the pun) different niches of consumers."

26.     Sony is particularly interested in the U.S. market during the holiday season that starts after Thanksgiving on "Black Friday."  For instance, in 2007, DisplaySeach reported that Sony's Playstation 3—then in high demand as holiday gift—was "featured on the cover [of a Best Buy product circular] in a bundle with the buyer's choice of a 46" Sony Bravia 1080p LCD TV or a 40" Bravia XBR LCD with 120° Hz refresh rate for $2499."  During this same holiday season, as noted above, Sony shipped more LCD televisions in North America than any other company.

27.     DisplaySearch reported that the "new Wal-Mart distribution and strong product mix that aligned with Big Box retailer strategy during the holiday helped Sony."  Similarly, iSupply reported that Sony "employed very aggressive pricing and promotion strategies to take advantage of the key holiday buying season."

28.     In its 2008 Annual Report, Sony reported that "[i]n anticipation of an increase in unit sales of LCD, Sony recognizes the importance of a stable supply of LCD panels."  The report identified S-LCD Corporation ("S-LCD") as a principal source of this "stable supply."  S-LCD is a joint venture between Sony and Samsung Electronics Co., Ltd. of Korea ("Samsung").  In a July 15, 2004 press release announcing the joint venture, Sony praised the "cooperation between Samsung and Sony" and stated "S-LCD panels will be at the core of our flat panel TV strategy."  Sony's stake in S-LCD is 50 percent minus 1 share.

29.     S-LCD started LCD panel production line operation in April 2005 and has since built additional production lines, beginning operations at a second line in August 2007 and a third line in June 2009.  In 2008, Sony's president told a press conference that "[f]or Sony, S-LCD will continue to be a main supplier for our LCD business."

30.     Sony incorporates S-LCD's panels into many Bravia televisions imported to, and sold in, the United States.  In its 2006 Annual Report, Sony lauded the "fast response time" of S-

LCD's panels and said that "Bravia LCD televisions feature the Sony Panel, an advanced LCD panel that was developed by S-LCD, our joint venture with Samsung, which also manufactures the panels."

31.    Sony's acts of infringing the claims of the '382 Patent include the manufacturing, using, marketing, importing, offering for sale, and selling of Sony's LCD panels and products, including, for example, Sony's Bravia televisions containing S-LCD's panels.

32.    Based on Apeldyn's present understanding, at least the following Sony LCD products infringe the claims of the '382 Patent, literally or under the doctrine of equivalents, in violation of Apeldyn's statutory rights:  KDL-32L5000, KDL-32S2010, KDL-32S5100, KDL-32XBR9, KDL-37L5000, KDL37M3000, KDL-37M4000, KDL-40S2010, KDL-40S5100, KDL-40V4150, KDL-40V5100, KDL-40VE5, KDL-40W3000, KDL-40W5100, KDL-40XBR7, KDL-40XBR9, KDL-40Z5100, KDL-46S2010, KDL-46S5100, KDL-46V5100, KDL-46VE5, KDL-46W5100, KDL-46W5150, KDL-46XBR8, KDL-46XBR9, KDL-46Z5100, KDL-52S5100, KDL-52V5100, KDL-52VE5, KDL-52W5100, KDL-52W5150, KDL-52XBR7, KDL-52XBR9, KDL-52Z5100, KDL55V5100, KDL-55XBR8, KDL-65W5100, KDL-70XBR7, and KLV-40ZX1M.

33.    Sony has directly infringed and knowingly induced others to infringe the '382 Patent so as to exploit the large and growing LCD market in the United States.  By way of example, Sony works directly with third parties (including major U.S. retailers such as Wal-Mart and Target) to develop and sell LCD televisions throughout the country.

34.    Sony maintains and develops relationships with business partners, including, for example, suppliers and customers, to promote and encourage the import, offering for sale, sale and use of its infringing visual display products in the United States.  Sony also actively sells to and solicits business from customers and distributors located in the United States.  Sony

coordinates with them and others about the designs, specifications, distribution and placement of orders for LCD products and panels destined for the U.S. market.   In addition, Sony communicates with third parties to promote and encourage the use, sale, importation and offering for sale of these same LCD products and panels in and into the United States.

35.    Sony has relationships with third parties to develop and supply the U.S. market with LCD products and panels.   Sony communicates and meets with third parties about its LCD products and panels and these communications and meetings facilitate the sale, offer for sale and distribution of Sony's LCD products and panels to customers and users in the United States.

36.    Sony has been aware of the '382 Patent since at least Apeldyn accused Sony of infringing the patent in a complaint filed on September 8, 2008 ("the 2008 Complaint").

37.    On information and belief, Sony was aware of the '382 Patent prior to the 2008 Complaint as a result of the routine review and operation of Sony's legal and intellectual property departments.   These professionals specialize in LCD-related patents and are tasked by Sony with identifying and reviewing new patents pertaining to LCD technology, such as the '382 Patent that issued on September 13, 1994.

38.    On information and belief, Sony also was aware of the '382 Patent prior to the 2008 Complaint as a result of its joint ownership in S-LCD and business relationship with Samsung whereby Sony jointly owns the manufacturing facility that makes many of Sony's LCD panels.

39.    As noted above, S-LCD was established in April 2004 to be a major source of LCD panels for both Samsung and Sony.   Just a few months later, on December 13, 2004, Apeldyn sent a notice letter to Samsung with the subject line "Fast Response LCD TV – United States Patent No. 5,347,382" ("2004 Notice Letter").   The 2004 Notice Letter stated, *inter alia*:

"It has come to our attention that Samsung Electronics may be employing the Apeldyn fast response technology covered by that patent in LCD TVs and other products that it has been selling in the United States."

40.     On information and belief, because of its obvious relevance to their joint venture and the manufacture of LCD panels for Sony, Samsung was obligated to inform its S-LCD joint venture partner Sony about the 2004 Notice Letter upon receipt.  On information and belief, Sony was entitled to be informed by Samsung of infringement risks relating to their S-LCD joint venture, including the 2004 Notice Letter.  Such communications between Sony and Samsung about the '382 Patent *prior* to the 2008 Complaint are fully consistent with communications between Sony and Samsung about the '382 Patent *after* the 2008 Complaint.

41.     Sony has intended, and continues to intend, to induce patent infringement by third parties and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  Sony's customers and others have in fact infringed the '382 Patent.

42.     Sony's acts of infringement of the '382 Patent have been made, and are being made, with full knowledge of Apeldyn's rights in the patent.  On information and belief, Sony was aware of the '382 Patent prior to the 2008 Complaint as a result of its routine identification and review of newly issued LCD patents.  On information and belief, Sony was also aware of the '382 Patent prior to the 2008 Complaint as a result of the 2004 Notice Letter and Sony's joint venture relationship in the S-LCD facility for manufacturing Sony's LCD panels.  In any event, Sony became aware of the '382 Patent no later than September 8, 2008 when the 2008 Complaint was filed.

43.    Sony has infringed and induced infringement of the '382 Patent by making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing, and causing to be imported products that are made by a method that infringes one or more claims of the '382 Patent in this judicial district and elsewhere in the United States.

44.    The products made by the infringing method that are used, caused to be used, sold, caused to be sold, offered for sale, caused to be offered for sale, imported, and caused to be imported by Sony meet each and every limitation of at least one claim of the '382 Patent, either literally or equivalently.

45.    Apeldyn has been and will continue to be injured by Sony's past and continuing infringement of the '382 Patent and is without adequate remedy at law.

46.    Sony has infringed and is infringing the '382 Patent with full knowledge of Apeldyn's patent rights and without a reasonable basis for believing its conduct is lawful.  Sony's acts have been and continue to be willful and deliberate, and will continue unless enjoined by this Court, making this an exceptional case and entitling Apeldyn to increased damages and reasonable attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

A.    That Defendants have infringed the Patent-in-Suit;

B.    That Defendants' infringement of the Patent-in-Suit has been willful;

C.    That Defendants and their parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants and employees of each of the foregoing, and those persons acting in concert or participation with any of them, are enjoined and restrained from continued infringement, including but not limited to using, making, importing,

offering for sale and selling products that infringe, and from inducing the infringement of the Patent-in-Suit, prior to its expiration, including any extensions;

D.     That Defendants and their parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants and employees of each of the foregoing, and those persons acting in concert or participation with any of them deliver to Plaintiff all products that infringe the Patent-in-Suit for destruction at Plaintiff's option;

E.     That Plaintiff be awarded monetary relief adequate to compensate Plaintiff for Defendants' acts of infringement of the Patent-in-Suit within the United States prior to the expiration of the Patent-in-Suit, including any extensions;

F.     That any monetary relief awarded to Plaintiff regarding the infringement of the Patent-in-Suit by Defendants be trebled due to the willful nature of Defendants' infringement of the Patent-in-Suit;

G.     That any monetary relief awarded to Plaintiff be awarded with prejudgment interest;

H.     That this is an exceptional case and that Plaintiff be awarded the attorneys' fees, costs and expenses that it incurs prosecuting this action; and

I.     That Plaintiff be awarded such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of any and all issues triable of right by a jury.


July 11, 2011

OF COUNSEL:

Gaspare J. Bono
Song K. Jung
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500

BAYARD, P.A.

/s/ *Richard D. Kirk*
Richard D. Kirk, Esquire (rk0922)
Stephen B. Brauerman, Esquire (sb4952)
222 Delaware Avenue, Suite 900
Wilmington, DE  19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com

*Attorneys For Plaintiff Apeldyn Corporation*