IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

APELDYN CORPORATION, )
)
    Plaintiff, )
)
v. ) Civ. No. 11-440-SLR
)
SONY CORPORATION AND SONY )
ELECTRONICS, INC., )
)
    Defendants. )

Richard D. Kirk, Esquire and Stephen B. Brauerman, Esquire of Bayard, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Gaspare J. Bono, Esquire, Song K. Jung, Esquire, and Lora A. Brzezynski, Esquire of McKenna Long & Aldridge LLP.

John W. Shaw, Esquire of Shaw Keller LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Steven Cherny, Esquire and Benjamin A. Lasky, Esquire of Kirkland & Ellis LLP.

**MEMORANDUM OPINION**

Dated: April 4, 2012
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Apeldyn Corporation ("Apeldyn") filed a complaint alleging infringement of its U.S. Patent No. 5,347,382 ("the '382 patent") by defendants Sony Corporation and Sony Electronics, Inc. (collectively, "Sony") on May 19, 2011. (D.I. 1) Therein, Apeldyn alleged that Sony infringes the '382 patent and induces infringement of the '382 patent by virtue of its making, selling, and importing "products that are made by a method that infringes one or more claims of the '382 patent," and that Sony's "infringement has been and continues to be willful and deliberate, and will continue unless enjoined by this court," which also renders this case exceptional. (*Id.* at ¶¶ 26, 29) Sony moved to dismiss Apeldyn's claims of inducement of infringement and willful infringement. (D.I. 5) Apeldyn filed a first amended complaint on July 12, 2011, mooting that motion. (D.I. 11) Thereafter, on July 28, 2011, Sony filed its renewed motion to dismiss plaintiff's inducement and willful infringement claims. (D.I. 13) Sony has also filed a motion to stay the proceedings. (D.I. 16) The court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1331 and 1338(a). For the reasons that follow, Sony's motions are denied.

## II. BACKGROUND

This is not the first lawsuit in this court regarding infringement of Apeldyn's '382 patent, which is directed to the response time of liquid crystal material in VA mode Liquid Crystal Display modules ("LCDs"). Apeldyn filed a complaint on September 8, 2008 against AU Optronics Corporation and AU Optronics Corporation America

2

(collectively, "AUO"), Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics USA Inc. (collectively, "CMO"), Sony, Samsung Electronics Co., Ltd., and Samsung Electronics America Inc. (collectively, "Samsung") (hereinafter, the "08-568 case"). (Civ. No. 08-568, D.I. 1) The court was presented with a motion by Samsung to disqualify Apeldyn's counsel on February 25, 2009. (*Id.*, D.I. 45) After several extensions of time, Sony answered the complaint on March 2, 2009. (*Id.*, D.I. 50) On September 30, 2009, the court conditionally granted Samsung's motion for disqualification. (*Id.*, D.I. 155, 156) Samsung was subsequently dismissed from the case. (*Id.*, D.I. 255) On April 13, 2010, the court received a stipulation of dismissal with respect to Sony. (D.I. 294) After an extensive claim construction and summary judgment practice (D.I. 627), and the subsequent denial of the parties' motions for reargument (D.I. 653), the parties stipulated to a form of judgment (D.I. 665) and Apeldyn has appealed the court's decisions to the Federal Circuit (D.I. 663). Apeldyn filed the present suit against Sony on May 19, 2011 and, shortly thereafter, filed another suit against Samsung for infringement of the '382 patent. (Civ. No. 11-581, hereinafter, "the 11-581 case")

According to the amended complaint in this action, defendant Sony Corporation is a Japanese manufacturer of LCD products, and defendant Sony Electronics, Inc., a Delaware corporation headquartered in California, is the domestic subsidiary importing LCD's for sale in the United States. (D.I. 11 at ¶¶ 8-9, 23) Since 2005, Sony's LCD televisions in North America have carried the "Bravia" logo. (*Id.* at ¶ 21) Since 2007, Sony has supplied a "unique series" of Bravia LCD televisions to major U.S. retailers (such as Wal-Mart and Target), which are targeted for "different niches of customers,"

3

for example, Black Friday shoppers. (*Id.* at ¶¶ 25-27) According to Sony's 2008 Annual Report, S-LCD Corporation ("S-LCD"), a joint venture between Sony and Samsung Electronics Co., Ltd. of Korea ("Samsung Korea"), principally provides a "stable supply" of LCD panels to meet increased consumer demand. (*Id.* at ¶ 28) S-LCD started LCD panel production in April 2005, with new production lines beginning operations in 2008 and June 2009. (*Id.* at ¶ 29) S-LCD's panels are incorporated into many Bravia televisions imported to and sold in the United States. (*Id.* at ¶ 30)

Apeldyn identifies several Sony LCD products that it alleges infringe the claims of the '382 patent by model number. (*Id.* at ¶ 32) Apeldyn further asserts that Sony has induced infringement of the '382 patent ("so as to exploit the large and growing LCD market in the United States") by developing and maintaining relationships with third party business partners (including major retailers) to "develop and sell" LCD's. (*Id.* at ¶¶ 33) More specifically, Sony "coordinates with them and others about the designs, specifications, distribution and placement of orders for LCD products and panels destined for the U.S. market," and "communicates with [the] third parties to promote and encourage the use, sale, importation and offering for sale of these same LCD panels in and into the United States," such as in meetings. (*Id.* at ¶¶ 34-35)

With respect to Sony's knowledge, Apeldyn asserts that Sony was aware of the '382 patent:

- "since at least Apeldyn accused Sony of infringing the patent in a complaint filed on September 8, 2008" (*id.* at ¶ 36);

- "prior to the 2008 complaint as a result of the routine review and operation of Sony's legal and intellectual property departments" (*id.* at ¶ 37);

4

- "prior to the 2008 complaint, as a result of its joint ownership in S-LCD and business relationship with Samsung [Korea] whereby Sony jointly owns the manufacturing facility that makes many of Sony's LCD panels" (*id.* at ¶ 38); and

- by a notice letter sent to Samsung by Apeldyn on December 13, 2004 (hereinafter, the "2004 notice letter"), alerting Samsung [Korea] that it may be infringing the '382 patent by "employing the Apeldyn fast response technology . . . in LCD TVs and other products" (*id.* at ¶ 39).

## III. STANDARD

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

At the pleading stage in a patent case, the information required by Form 18 has

been deemed adequate notice to pass muster under Rule 8. *See McZeal v. Spring Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). In this regard, Form 18 requires that the following information be provided in a complaint for direct infringement: (1) an allegation of jurisdiction; (2) a statement that plaintiff owns each patent at issue and, for each such patent, its number, date of issuance, and the general invention described therein; (3) for each defendant accused of infringement, identification of the accused product, process or method[1] "that embod[ies] the patented invention;" and (4) a demand for relief, including injunctive relief and/or an accounting for damages.

## IV. DISCUSSION

### A. Indirect Infringement

#### 1. Standard

At issue are allegations of indirect infringement and the pleading requirements for such. Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To demonstrate inducement of infringement, the patentee must establish, first, that there has been direct infringement and, second, that the alleged infringer had "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) ("*Global-Tech*"). Under 35 U.S.C. § 270(c), a patentee must demonstrate that an alleged contributory infringer has sold, offered to sell or imported into the United States a component of an infringing product "knowing the same to be especially made or

---

[1] This court has previously held that a plaintiff must "specify, at a minimum, a general class of products or a general identification of the alleged infringing methods." *Eidos Communications, LLC v. Skype Technologies SA*, 686 F. Supp. 2d 465, 468 (D. Del. 2010).

6

especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." Therefore, § 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which [its] component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 478 (1964) ("*Aro*").

### 2. Discussion

Taking the above guidance and applying it to the facts at bar with a realistic view as to what a plaintiff can generally plead at this stage of the proceedings with respect to another party's knowledge, the court concludes that the motion to dismiss should be denied. The court starts with the fundamental premise that the complaint fully complies with Form 18, that is, the allegations of direct infringement identify the patent at issue, the accused product, and the damages sought. In order to appropriately plead indirect infringement, plaintiff must further allege that the moving defendant has knowledge, not only of the patent but of the allegedly infringing nature of the asserted conduct, both under § 271(b) ("knowledge that the induced acts constitute patent infringement"[2]) and § 271(c) (knowledge "that the combination for which [its] component was especially designed [is] both patented and infringing"[3]).

Apeldyn has asserted in this regard that Sony knew of the '382 patent at least as of the filing of the complaint in the 08-568 case in September 2008 and, armed with that knowledge, has continued to indirectly infringe by making and/or selling infringing LCD

---

[2]*Global-Tech*, 131 S. Ct. at 2068.

[3]*Aro*, 377 U.S. at 488.

7

products in the United States. (D.I. 11 at ¶¶ 36, 41-44) Additionally, Sony works directly with American customers to develop infringing LCD televisions for sale by its customers to end consumers. (*Id.* at ¶¶ 33-35) By its motion, Sony argues that Apeldyn provides only "conclusory and formulaic" assertions that Sony had knowledge of the '382 patent before Apeldyn commenced suit against Sony. (D.I. 14 at 9-11)

The court agrees that Apeldyn's allegations that Sony acquired knowledge of the '382 patent through either its in-house legal department's due diligence (D.I. 11 at ¶ 37), the 2004 notice letter sent to Samsung Korea (*id.* at ¶ 39), or its (unspecified) activities vis a vis S-LCD (*id.* at ¶ 38) are speculative. However, Sony indisputably became aware of the '382 patent through litigation of the 08-568 case in this court, filed in September 2008. (*Id.* at ¶ 36)

The court concludes that plaintiff's allegations pass muster under Rule 8 and, therefore, satisfy the requirements of *Global-Tech*. In this regard, it is important to keep in mind that the Supreme Court was reviewing *Global-Tech* post-trial and did not speak to the pleading requirements for indirect infringement under Rule 8. Moreover, there is no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct.[4] Indeed, it is instructive to bear in mind the fundamental purpose of asserting indirect infringement, that is, to ensure that the patentee can recover full compensation[5] for any damages suffered as a result of infringement. The fact that

---

[4] As there arguably is for allegations of willful infringement. *See In re Seagate Technology, LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (hereinafter, "*Seagate*").

[5] Of course, entitlement to full compensation prohibits multiple recoveries, that is, "after a patentee has collected from . . . a direct infringer damages sufficient to put him in the position he would have occupied had there been no infringement, he cannot

8

plaintiff would be prohibited from collecting damages related to indirect infringement for any pre-knowledge (e.g., pre-filing) conduct[6] is the only substantive consequence of allowing allegations such as those at bar to go forward.

In sum, if a complaint sufficiently identifies, for purposes of Rule 8, the patent at issue and the allegedly infringing conduct, a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of *Global-Tech*.[7] Sony's motion to dismiss, therefore, is denied as it relates to the allegations of indirect infringement.[8]

### B. Willful Infringement

#### 1. Standard

The Federal Circuit set forth a two-pronged standard for establishing willfulness

---

thereafter collect actual damages from a person liable only for contributing to the same infringement." *Aro*, 377 U.S. at 512.

[6]In *Aro*, the Supreme Court held that the knowledge requirement of § 271(c) limited an alleged contributory infringer's liability to sales made after it received notice of the existence of the patent. *See also Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990).

[7]The court notes that, although induced and willful infringement require subjective intent, the remedies are substantially different (actual damages versus enhanced damages), thereby justifying a different take of when the intent must be formed.

[8]The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F. Supp. 2d 349 (D. Del. 2010), and *Eon Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff.

in *Seagate*, the first prong of which states:

> [T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry.

497 F.3d at 1371 (internal citations omitted). The existence of this objective risk is "determined by the record developed in the infringement proceeding." *Id.* The objective prong is generally not met when the accused infringer maintains a reasonable defense to infringement, even if the jury ultimately reaches a verdict of infringement. *See Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) (holding that objective prong is generally not met "where an accused infringer relies on a reasonable defense to a charge of infringement"); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009) (concluding that accused infringer presented a substantial question of noninfringement which precluded a finding of objective recklessness despite the jury's ultimate finding of infringement).

If the objective prong is satisfied, the patentee must next establish that "this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Seagate*, 497 F.3d at 1371. This subjective prong hinges on the fact finder's assessments of the credibility of witnesses. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 557 (D. Del. 2011). "The drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province of the fact finder that observed the witnesses." *Liquid Dynamics*

10

*Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006).

### 2. Discussion

Sony argues that Apeldyn's allegations are insufficient to sustain Apeldyn's pre-suit willfulness claim for the same reasons those allegations are insufficient to sustain its inducement claims. (D.I. 14 at 13) Alternatively, Sony argues that "one cannot assert willfulness merely because the plaintiff asserts its patent in [a prior] action." (*Id.* (citing *Seagate*, 497 F.3d at 1374)) As Sony's citation demonstrates, however, *Seagate* requires only that "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the infringer's pre-filing conduct." *Seagate*, 497 F.3d at 1374. "Pre-filing conduct," for the intents and purposes of **this** case, does not exclude the filing of (and substantive participation in) the 08-568 litigation.

While Sony points to no contrary authority, it argues in its reply papers that "the parties agreed when Sony was dismissed from the Supplier Action [the 08-568 case] that the complaint in this action would relate back to the date of the [08-568] complaint," and that "Apeldyn itself [ ] treats this action as a continuation of the [08-568] action." (D.I. 24 at 4) Thus, Sony suggests that the court should dismiss the complaint absent "pleaded facts sufficient to plausibly demonstrate Sony's knowledge of the patent-in-suit before Apeldyn commenced the [08-568] action." (*Id.* at 4-5) Alternatively, Sony argues that, "if Apeldyn is permitted to rest its inducement claim on Sony's knowledge of the ['382 patent] from Apeldyn's original complaint in the [08-568] action, Apeldyn's inducement claim should be limited to that date." (*Id.* at 5) (citing *Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC*, Civ. No. 10-666, 2011 WL 941197, *4 (D. Del.

11

Mar. 16, 2011))

Notwithstanding that these arguments were not made in Sony's opening papers,[9] a review of the cited provision of the parties' original settlement agreement reveals only that Sony previously agreed that "the filing date of [a] subsequent action for purposes of any laches defense asserted by [Sony] shall be deemed to be the filing date of the complaint in this ]08-568] action."[10] (D.I. 23, ex. A) This agreement to limit Sony's defenses does not inform the inducement or willfulness inquiries at bar. As Apeldyn has pled that Sony had knowledge of the '382 patent before the filing of the instant suit, Sony's motion shall be denied. The court shall reserve judgment on what limitations on damages may be appropriate at this time.

## C. Motion to Stay

### 1. Standard

Motions to stay invoke the broad discretionary powers of the court. See *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (citing *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976)). Three general factors inform the court in this regard:

> (1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date set.

---

[9] See L.R. 7.1.3(c)(2).

[10] "Two elements underlie the defense of laches: (a) the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice attributable to the delay." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).

*Enhanced Security Research, LLC v. Cisco Sys., Inc.*, Civ. No. 09–571, 2010 WL 2573925, at *3 (D. Del. June 25, 2010) (citing *St. Clair Intellectual Prop. Consultants v. Sony Corp.*, Civ. No. 01-557, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003)).

### 2. Discussion

Sony asks the court to stay this action pending the resolution of the 08-568 and 11-581 cases (collectively, "the supplier actions"), insofar as a stay "will allow the parties that designed and manufactured the accused technology to defend that technology," perhaps mooting this case entirely, and simplifying issues for trial. (D.I. 17 at 1) That is, Sony did not design or manufacture the allegedly infringing LCD panels (containing the accused "overdrive" technology). Rather, Sony purchased LCD panels from third party suppliers who have been sued directly by Apeldyn in the supplier actions. (*Id.* at 3)

In support of its motion, Sony argues that the Federal Circuit has recognized, in the priority context, that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This "customer suit" exception has been applied in situations "when [a] first suit is brought against the customer in a district where the manufacturer cannot be joined as a defendant," and the first suit "is filed against a customer who is a mere reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods." *Teleconference Sys. v. Proctor & Gamble Pharma., Inc.*, 646 F. Supp. 2d 321, 327 (D. Del. 2009) (citations omitted).

13

The '382 patent is directed to "impulse switching," or "the application of a voltage in excess of the voltage corresponding to the target retardance" to a liquid crystal cell through the use of stacked, "opposing" retarders . ('382 patent, col. 2:6-10, 2:24-27) In this case, Apeldyn accuses Sony of working directly with third parties "to develop and sell LCD televisions," but it also "coordinates with them about the designs. . . for LCD products **and panels** destined for the U.S. market." (D.I. 11 at ¶¶ 33-34) (emphasis added) According to Jaime A. Siegel, Esquire, Senior Intellectual Property Counsel in the Intellectual Property Department of Sony, Sony purchased all of the LCD modules it has incorporated into the accused LCD televisions from third party suppliers, specifically, AUO, Sharp, Samsung Electronics Co. Ltd. and S-LCD. (D.I. 18 at ¶¶ 4, 6-9) In response, Apeldyn provides press releases (dated July 2004 and April 2005) stating that "LCD module production from S-LCD [is] customized uniquely for Samsung and Sony," and that S-LCD ships "LCD panels with integration of peripheral devices such as back-light and driving circuitry according to [Sony and Samsung's] individual specification requests." (D.I. 23 at 9, ex. D, E) Similarly, Sony's Form 20-F (dated March 2011) provides that Sony has "significant" equitable influence over S-LCD. (*Id.*, ex. C at F-26)

The court does not, on this pre-discovery record, resolve the question of Sony's role vis a vis the design of S-LCD's panels. Based on the allegations of the amended complaint,[11] however, Sony is more than a mere reseller of goods, and the "customer

---

[11](D.I. 11 at ¶¶ 28-30, 33-35)

14

suit" exception is inapplicable.[12]

While discovery has not been commenced in this action and no trial date has been set, the appeal in the 08-568 case is also in its infancy. More specifically, after a requested stay, the briefing on the substantive issues on appeal has yet to commence.[13] Sony is not involved with the pending appeal, which presumably will concern the court's decision not to exclude Apeldyn's expert (Civ. No. 08-568, D.I. 625); denial of AUO's motions for summary judgment of invalidity and noninfringement; and granting CMO's motion for summary judgment of noninfringement (*id.*, D.I. 628). The Federal Circuit will also review the court's claim construction *de novo*. (D.I. 626)

The 11-581 case is not on appeal. Rather, that case is also in its infancy; the parties will not make their Rule 26(a)(1) disclosures until May 14, 2012. (Civ. No. 11-581, D.I. 19) Moreover, Samsung has just recently filed a motion to stay the 11-581 case pending appeal of the 08-568 case. (*Id.*, D.I. 20) Apeldyn's responsive brief has not yet been filed.

Apeldyn argues that it would be prejudiced by a stay of this litigation because

---

[12]*Compare Honeywell Intern. Inc. v. Audiovox Comms. Corp.*, Civ. Nos. 04-1337, 04-1338, 04-1536, 2005 WL 2465898, *3 (D. Del. May 18, 2005) (stating that it would be "unwise" to attempt to try a case against 40 defendants in a large-scale litigation where "liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacturer and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation.") (cited by Sony at D.I. 174 at 8).

[13]*See* Fed. Cir. Civ. Nos. 2012-1172 & 2012-1173. On March 26, 2012, Apeldyn filed a "motion to affirm Samsung as an appellee" and "a motion to separate the appeals or, in the alternative for expanded briefing and oral argument." The documents are not available on the Federal Circuit's PACER site, however, it appears as though substantive briefing may be further delayed pending resolution of these matters.

Sony obtained its release in the 08-568 case by expressly giving Apeldyn the right to sue in this action, thus, "staying [this action] would create the perverse result that Sony paid no price to get released from the 2008 action while Apeldyn is punished," i.e., is "unable to enforce its rights [while] Sony would be free to grow its sales of the accused products." (D.I. 23 at 13) While Sony disagrees with Apeldyn's assertion of prejudice, Sony does not contest that, when Apeldyn dismissed it from the 08-568 case, the present suit was anticipated.[14] (D.I. 25 at 8-9; D.I. 23, ex. A (parties' agreement))

Balancing the foregoing, the status of this litigation favors a stay, while the prejudice to Apeldyn weighs against a stay. The remaining consideration, or the potential for simplification of the issues for trial, is better evaluated once the appeal is briefed and contentions are exchanged in the present litigation. The court will deny Sony's motion to stay without prejudice to renew once discovery has been completed.

## V. CONCLUSION

For the aforementioned reasons, Sony's motion to dismiss Apeldyn's willful and contributory infringement claims is denied, and its motion to stay is denied without prejudice to renew after the close of discovery. An appropriate order shall issue.

---

[14]The parties subsequently agreed (in December 2010) that no new litigation would occur while they attempted mediation. (D.I. 23, ex. B)

16