## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APELDYN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-440-SLR/SRF |
| | ) |
| SONY CORPORATION and SONY | ) |
| ELECTRONICS INC., | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| APELDYN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-581-SLR/SRF |
| | ) |
| SAMSUNG ELECTRONICS CO., LTD. | ) |
| and SAMSUNG ELECTRONICS | ) |
| AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM ORDER

At Wilmington this 27th day of July, 2016, having examined defendants' motion to

review taxation of costs and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 215) is granted in part and denied in part,

for the reasons that follow:

1. **Standard of review.** Federal Rule of Civil Procedure 54(d) authorizes a

district court to award costs to the prevailing party, consistent with the costs

enumerated under 28 U.S.C. § 1920. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,* 674 F.3d 158, 170-71 (3d Cir. 2012). Therefore, although there is a "decided preference for the award of costs to the prevailing party," § 1920 has been construed "narrowly" in keeping with the "relatively minor, incidental expenses" listed in that statute. *Taniguchi v. Kan Pac. Saipan, Ltd.,* 132 S. Ct. 1997, 2006 (2012) (the Court reiterated its view of "the narrow scope of taxable costs").

2. "In the District of Delaware, Local Rule 54.1 'provides guidance to counsel and litigants as to how this Court has chosen, as a general matter, to exercise its discretion with respect to taxation of costs.'" *Bethea v. Rash,* 2015 WL 4477693, at \*2 (D. Del. July 22, 2015) (citation omitted). Depending on the circumstances of a case, "the court retains the discretion to award costs beyond the limitations of Local Rule 54.1 to the fullest extent permissible under § 1920," or not to award costs at all, since § 1920 does not **guarantee** an award of costs." *Id.* (emphasis added).

3. The burden is initially on the party seeking costs "to prove entitlement to reimbursement." *Coalition to Save Our Children v. State Bd. of Educ.*, 901 F. Supp. 824, 833 (D. Del. 1995) (citing *W. Virginia Univ. Hosps., Inc. v. Casey,* 898 F.2d 357, 363 (3d Cir. 1990)). Consistent with 28 U.S.C. § 1924, "[b]efore any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit . . . that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." In other words, costs will not be taxed unless "the expenses are reasonable, necessary to the prosecution of the litigation, and adequately documented."

2

*Coalition*, 901 F. Supp. at 833.

    4. **Deposition costs.** Under 28 U.S.C. § 1920(2), a party can claim as costs the "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." The Third Circuit has stated in this regard that "deposition expenses, including the costs of deposition transcripts, may be awarded as costs to the prevailing party if the court determines, at the end of the litigation, that the copies were of papers necessary for use in the case." *Tabron v. Grace*, 6 F.3d 147, 160 n.9 (3d Cir. 1993). Local Rule 54.1(b)(3) reflects such guidance, consistent with the discretionary nature of Fed. R. Civ. P. 54 (d)(1)[1] and § 1920,[2] by allowing the "reporter's reasonable charge for the original and one copy of a deposition and the reasonable cost of taking a deposition electronically or magnetically recorded only where a substantial portion of the deposition is used in the resolution of a material issue in the case." This latter phrase has been further interpreted to exclude from taxation deposition transcripts that were used "to develop general facts of the case, to prepare [an] attorney for cross-examination of [adverse] witnesses, or [that] were merely referenced at trial." *Bethea*, 2015 WL 4477693, at *4. *See also Honeywell Int'l Inc. v. Hamilton Sunstrand Corp.*, 2009 WL 3153496, at *2 (burden on movant to show that "a **substantial** portion was actually **used** in the resolution of a material issue.") (emphasis in original). The fact

_____

    [1]"**Unless . . . a court order provides otherwise**, costs . . . should be allowed to the prevailing party." (Emphasis added)

    [2]"A judge . . . **may** tax as costs the following. . . ." (Emphasis added)

that judges exercise their discretion differently[3] should be neither surprising nor binding.

5. According to the bill of costs at issue, the Clerk of Court relied on the analyses in *Concordance Corp. v. Amazon, Inc.,* 855 F. Supp. 2d 244, 254-255 (D. Del. 2012), and *Honeywell,* 2009 WL 3153496, at *2, for the proposition that "the taxation of deposition costs should be limited to instances in which 25% or more of the depositions were used in the resolution of a material issue." (D.I. 214 at 3)  As noted above, the judge in *Honeywell* required actual use of the deposition.  In *Concordance,* the judge went the further step of defining what "substantial use" was, by literally counting the pages of the deposition transcripts made part of the record.

6. The mathematical exercise undertaken by the Clerk's Office at bar is a reasonable starting point for the administrative task of assigning costs, given that the Clerk of Court is not in a position to judge the substantive importance of the deposition testimony.   However, given the limits placed on counsel vis a vis the record they can present (i.e., limited trial hours and limited page limits), such mathematical precision is not always the best barometer of whether the depositions were "necessarily used" in a case to resolve a material issue.

7. In the case at bar, the depositions in dispute were cited as important considerations in granting summary judgment for defendants on the issues of invalidity and non-infringement due to collateral estoppel.  Although I only cited the most critical

---

[3]*See, e.g., Lab. Skin Care Inc. v. Ltd. Brands, Inc.*, 2016 WL 1266564, at *4 (D. Del. Mar. 30, 2016) ("The Court finds that Defendants' decision to take the depositions of corporate representatives and to purchase copies of the transcripts of these depositions for potential use at trial was at least 'reasonably necessary' as part of their efforts to effectively litigate this patent case.") (citing 10-54 Moore's Federal Practice Civil § 54.103).

4

pages of the depositions in support of my decision, that does not mean that the remainder of the depositions were not reviewed and used in a broader sense in my analysis. I conclude that the depositions of Rumbaugh, Conner, and Yeh were necessarily and substantially used to resolve material issues in the case.

8. **Videotaped depositions.** With respect to the costs of videotaping the deposition of Dr. Kmetz, I agree that such costs should not be reimbursed. The videotaped version of Dr. Kmetz's deposition certainly was not used in connection with the motion practice and, as an expert, it would be exceedingly rare for Dr. Kmetz to testify at trial via deposition (videotaped or otherwise), as opposed to as a live witness. In sum, defendants had no reasonable basis to incur this cost.

9. **Costs associated with e-discovery.** Title 28 U.S.C. § 1920(4) states that a judge or clerk of any court may tax as costs "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Local Rule 54.1(b)(11) provides: "Claims for costs other than those specifically mentioned in the preceding paragraphs of subpart (b) of this Rule ordinarily will not be allowed, unless the party claiming such costs substantiates the claim by reference to a statute or binding court decision." The Third Circuit allows the taxation of e-discovery costs, albeit limited to the costs associated with those tasks and processes which are the functional equivalent of "making copies." *See Race Tires America, Inc.*, 674 F.3d at 160 (concluding that "only scanning and file format conversion can be considered to be 'making copies'").

10. The Clerk of Court disallowed certain e-discovery costs at bar, including the

5

costs associated with converting electronic documents into color image files and the

costs associated with Bates labeling.  With respect to the latter, I agree with those

courts that have recognized the real-world necessity of Bates labeling a document

production and conclude that the costs associated with such generally should be

recoverable.  *See DSM Desotech, Inc. v. 3D Systems Corp.*, 2013 WL 3168730, at *2

(N.D.Ill. June 20, 2013) ("Courts in this district have allowed costs for Bates labeling as

part of 'making copies' particularly in complex litigation requiring a large amount of

documents to be produced.").[4]  *See also Nobel Biocare USA, LLC v. Technique*

*D'Usinage Sinlab*, 2013 WL 819911, at *6 (E.D. Va. March 4, 2013) (collecting cases

which "generally hold that the costs of file format conversion, electronic Bates stamping,

and other costs of actually producing documents for electronic discovery are taxable as

the functional equivalent of copies.").

11.  With respect to the costs associated with formatting, the parties in most

sophisticated cases control those costs through agreement.  In this case, the parties

agreed in their protective order that

> electronically stored information . . . shall be produced to the requesting
> party as text searchable image files (e.g., TIFF) if the producing party
> maintains such text searchable files for its own use.  When a text searchable
> image file is produced, the producing party must preserve the integrity of the
> underlying electronically stored information, i.e., the original formatting, the
> metadata and, where applicable, the revision history.  Information shall be
> produced as single page TIF (black and white) or JPEG (color) images and,
> where appropriate, associated multi-page text files containing extracted text
> or OCR with Summation load files containing all requisite information, including

---

[4]As opposed to the costs associated with confidentiality branding, which is "the
kind of work conventionally performed by attorneys or paralegals, the costs of which are
not recoverable under section 1920 and go beyond mere reproduction or
exemplification."  *Id.*

relevant metadata. . . .

(D.I. 86 at ¶ 26)[5]  According to the declaration of Donte Hubbard,[6] submitted in support of defendants' request for $86,053.33 in such costs, "in accordance with Smart Data's standard practices, Smart Data prepared native files without color information for production as black and white images and prepared native files with color information for product as color **[JPEGs]**." (D.I. 213, ¶¶ 2, 3) (emphasis added)  According to the declaration of Neil P. Sirota,[7] "the costs being sought represent the cost of uploading and converting production documents into **TIFF files** for documents that were actually produced to Apeldyn pursuant to its requests for production." (D.I. 210, ¶ 12) (emphasis added)

12. As plaintiff points out, there are inconsistencies between defendants' ESI invoices and other of their documents with respect to formatting. In light of these inconsistencies, along with the fact that there is no reasonable way to determine the accuracy of the number of color documents produced or the costs associated with Bates labeling,[8] and keeping in mind that defendants "chose to oppose an early

---

[5]The protective order is generally consistent with the District of Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI") at 5(c): "ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF), and "the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting. . . ."

[6]Mr. Hubbard is the former president of Smart Data Consulting ("Smart Data"), the company that provided ESI production services for defendants in this case.

[7]A partner with Baker Botts L.L.P., counsel of record for defendants.

[8]The Bill of Costs claims a flat fee of $86,053.33 "in costs associated with electronic discovery that are the functional equivalent of making copies." (D.I. 208 at 6)

resolution and proceed with discovery" (D.I. 218 at 4), thereby increasing the costs of litigation, I believe that defendants should recover some, but certainly not all, of their e-discovery costs. Under all the circumstances, defendants should recover 25% of their e-discovery costs, or $21,513.33.

12. **Conclusion.** For the reasons stated, defendants' request for costs is granted in part and denied in part, and the taxation of costs is amended to include $6,783.05 in costs associated with the deposition transcripts of Kmetz, Rumbaugh, Conner, and Yeh (excluding the $850 cost of videotaping the deposition of Dr. Kmetz), and $21,513.33 of e-discovery costs, for a total of $28,296.38.

United States District Judge